O

# United States District Court
# Central District of California

| | |
|---|---|
| BFS GROUP, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>ARC.CITY, INC.,<br><br>        Defendant. | Case № 2:22-cv-03779-ODW (AJRx)<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I. INTRODUCTION

On October 31 and November 1, 2023, the Court held a bench trial in this action. Plaintiff BFS Group, LLC ("BFS") tried one claim against Defendant Arc.City, Inc. for breach of contract. The parties submitted documentary evidence and elicited testimony from witnesses Jeff Norihiro, Carlos "Charlie" Gonzalez, Cruz Espinoza, Gregory Springer, Michael Ramos, Rich Cartier, and Adam Bohannon. Additionally, the Court engaged in its own questioning of witnesses and allowed subsequent cross-examination and re-direct questioning by the parties.

Having carefully reviewed and considered the evidence and arguments of counsel as presented at trial and in their written submissions, the Court issues the following findings of fact and conclusions of law, pursuant to Federal Rule of Civil

Procedure 52(a). To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such, and vice versa.

## II. FINDINGS OF FACT

1. BFS is a building supply company that supplies lumber and building materials to construction projects.

2. BFS was formerly known as BMC West, LLC, including at the time of the events at issue in this matter. BMC West changed its name to BFS Asset Holdings and assigned its claim in this lawsuit to BFS. The parties agree that BFS has standing to pursue its breach of contract claim against Arc.City here.

3. Arc.City is a licensed general contractor in California and, in 2021, was the general contractor on a multifamily home construction project at 1010 Kenmore, Los Angeles County, California ("Kenmore Project"). As the general contractor, Arc.City was generally responsible for "completion of an entire project, including purchasing all materials, hiring and paying subcontractors, and coordinating all the work." *See* Contractor, Black's Law Dictionary (11th ed. 2019).

4. Adam Bohannon is part-owner of Arc.City, along with Michael Ramos and Bohannon's father, Brian Bohannon.

5. Gonzalez & Sons Construction, Inc. ("G&S") was a wood framing subcontractor doing business in Los Angeles at the time of the events at issue in this matter. Carlos Gonzalez was a project manager for G&S.

**A.   The Kenmore Project**

6. In 2021, the lumber market was extremely volatile. Particularly in May 2021, prices for lumber climbed to national historic highs.

7. Around this time, Arc.City was soliciting subcontractor and materials bids for the Kenmore Project and sent BFS and G&S a lumber takeoff list.

8. G&S was bidding to be Arc.City's framing subcontractor. As part of the bidding process, G&S submitted the lumber takeoff list to BFS and requested a lumber bid for the Kenmore Project.

9. On May 18, 2021, BFS issued the "Consolidated Bid Proposal" to G&S, offering to source and provide the lumber for the Kenmore Project for $2,463,449.27.

10. Due to the volatility in the lumber market at that time, BFS would hold the prices quoted on the Consolidated Bid Proposal for only one day.

11. The Consolidated Bid Proposal states "Prices on this Quotation/Contract are valid for 1 day. Once accepted by buyer and seller, shipments must begin within 30 days and be evenly distributed through the job. Contract prices expire in 90 days." The Consolidated Bid Proposal incorporates by reference the "terms and conditions of sale located on [BFS's] website at www.buildwithbmc.com."

12. As of May 18, 2021, Arc.City and G&S had not reached a subcontract agreement for the Kenmore Project lumber. Gonzalez did not want to sign and accept the Consolidated Lumber Bid for the Kenmore Project because G&S did not have a contract signed with Arc.City yet and Gonzalez did not want to be responsible for the lumber if the subcontract agreement fell through.

13. On the same day, May 18, 2021, Bohannon signed the Consolidated Bid Agreement and sent the signed document to BFS.

14. Trial testimony supports that Bohannon signed the Consolidated Bid Proposal to lock in the BFS quoted prices, take control of the lumber for the project, move the project forward, and avoid the additional markup that would apply if the lumber order went through G&S.

15. On May 19, 2021, BFS began sourcing and ordering the lumber for the Kenmore Project, due to the extreme market volatility.

16. BFS purchased $704,423.17 worth of lumber for the Kenmore Project, representing $962,459.55 of the contract price.

17. BFS was prepared to begin shipping lumber to Arc.City within a month, with the remaining lumber orders for the Kenmore Project pending at lumber mills.

18. No evidence or testimony at trial suggested that Arc.City was prepared during the summer of 2021 to accept delivery of framing lumber for the Kenmore

Project. BFS offered credible testimony to the contrary, that framing on the Kenmore Project was delayed.

19. After May 18, 2021, the price of lumber declined significantly.

20. During the summer of 2021, BFS and Gonzalez learned that Bohannon was shopping around for other lumber bids on the Kenmore project and also that Bohannon had indicated that he was not going to stand by the Consolidated Bid Proposal he signed.

21. In August 2021, representatives of BFS and G&S met with Bohannon in person on the Kenmore Project jobsite to discuss honoring the Consolidated Bid Proposal. Bohannon informed BFS and G&S at that meeting that he was not going to purchase lumber from BFS pursuant to the Consolidated Bid Proposal. The meeting became heated. Bohannon reiterated that he would not accept the lumber. When BFS representatives raised the possibility of litigation, Bohannon told them to sue him.

22. Shortly thereafter, on a phone call between Norihiro of BFS and Bohannon of Arc.City, Bohannon told Norihiro that Arc.City would be better off in court than purchasing the lumber per the Consolidated Bid Proposal.

23. On September 1, 2021, Bohannon emailed BFS and stated that the Consolidated Bid Proposal "has expired and [is] no longer valid."

24. Arc.City did not purchase any lumber from BFS per the Consolidated Bid Proposal.

25. In September and October 2021, Arc.City instead purchased lumber from Ganahl Lumber Company for less than the Consolidated Bid Proposal.

**B.    The Lumber**

26. Following the August 2021 meeting and phone call, in September and October 2021, BFS cleared out its existing lumber inventory pre-allocated to other customer contracts. In November 2021, BFS began selling the lumber purchased for Arc.City and the Kenmore Project; BFS completed the sale of nearly all of the Kenmore Project lumber by February 2022.

27. Due to volume of lumber at issue—approximately eleven to twelve train cars—BFS summarized the resale of the lumber purchased for Arc.City in a damages spreadsheet for trial. The Court admitted BFS's spreadsheet pursuant to Federal Rule of Evidence 1006, over Arc.City's objection.

28. BFS's damages spreadsheet summarized the contents of (1) over 600 pages of resale invoices showing when and for what prices BFS sold each lumber product after Arc.City's refusal, (2) invoices from lumber mills to BFS showing the price at which BFS purchased the lumber, and (3) a bid recap sheet showing a breakdown of the contract prices for each individual item of lumber Arc.City had agreed to purchase from BFS. BFS offered credible, persuasive, and unrebutted testimony akin to accept-reject audit testing, demonstrating the numbers in the damages spreadsheet were directly traceable to BFS's exhibits 21 (resale invoices), 36 (Kenmore Project lumber purchases), and 37 (Kenmore Project bid recap report).

29. Between November 2021 and February 2022, BFS was able to sell the lumber it purchased for Arc.City for the Kenmore Project to other customers at the then-market price, for a total amount of $436,413.08.

30. In this action, BFS seeks to recover as damages the difference between the portion of the contract price for which it purchased Arc.City lumber for the Kenmore Project—$962,459.55—and the amount it was able to recover by reselling the lumber—$436,413.08. That difference is $526,046.47.

31. The Court adopts additional facts as stipulated in sections five and six of the Final Pretrial Conference Order.

### III. ADVERSE CREDIBILITY FINDINGS

32. On November 1, 2023, Arc.City's part owner Ramos testified in this matter. Ramos gave inconsistent testimony. Additionally, BFS's counsel successfully impeached Ramos on multiple occasions. The Court does not find Ramos to be a credible witness and therefore does not credit his testimony. The Court considers Ramos's testimony only to the extent it was corroborated by other, credible witnesses,

or goes against Arc.City's interests. *See D'Amico v. Bd. of Med. Examiners*, 11 Cal. 3d 1, 22 (1974) (noting in the evidentiary context that "admissions against interest have a very high credibility value"); *see also* Fed. R. Evid. 801(d)(1)–(2) (providing in the evidentiary hearsay context that admissions against interest are admissible).

33. On November 1, 2023, Arc.City part owner Adam Bohannon testified in this matter. BFS's counsel successfully impeached him on multiple occasions. Additionally, BFS's counsel introduced evidence, for impeachment purposes only, that Bohannon was convicted of felony rape in 2018.

34. Further, the Court finds that Bohannon engaged in serious litigation misconduct during the trial, specifically intimidating adverse witnesses. BFS witnesses Norihiro and Gonzalez both testified that, during court recesses, Bohannon approached them and made intimidating statements. To Norihiro, Bohannon said "[s]omething about, if [Norihiro] was ready to surrender and [Bohannon was] coming after [Norihiro] in two years." (Oct. 31 Tr. 76:21–77:4, ECF No. 84.) When the Court asked Bohannon if what Norihiro said was true, Bohannon confirmed that he made the statements. (*Id.* at 77:10–19.) To Gonzalez, Bohannon said he was "going to get [Gonzalez's] license taken away" and "go after" Gonzalez and his father. (*Id.* at 205:5–23.) Gonzalez felt Bohannon was attempting to intimidate him so Gonzalez would not give testimony unfavorable to Arc.City. (*Id.*)

35. Based on Bohannon's attempts to intimidate BFS witnesses, his felony rape conviction, his admitted personal financial stake in the litigation, and his impeached testimony, the Court does not find him to be a credible witness and therefore does not credit his testimony. The Court considers Bohannon's testimony only to the extent it was corroborated by other, credible witnesses, or goes against Arc.City's interests. *See D'Amico*, 11 Cal. 3d at 22; *see also* Fed. R. Evid. 801(d)(1)–(2).

## IV. CONCLUSIONS OF LAW

36. In this bench trial, BFS tried one claim for breach of contract on the grounds that Arc.City breached the parties' contract, the "Consolidated Bid Proposal," by failing to pay for the lumber BFS purchased for Arc.City for the Kenmore Project.

37. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because BFS is diverse in citizenship from Arc.City and seeks more than $75,000 in damages.

38. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to BFS's claims occurred in this judicial district, and Arc.City's principal place of business is located in this judicial district.

39. To prevail on a breach of contract claim, BFS must establish the following four elements by a preponderance of the evidence: (1) existence of an enforceable agreement between the parties, (2) BFS's performance or excuse for nonperformance, (3) Arc.City's breach of an obligation under the contract, and (4) BFS's damages from the breach. *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

### A. Existence of Enforceable Agreement

40. Section 2204 of the California Commercial Code provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract."

41. Section 2207 of the California Commercial Code states that "[c]onduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale" even where the parties' writings may not otherwise establish a contract.

42. Arc.City solicited a lumber bid by sending BFS and G&S a lumber takeoff list for the Kenmore Project.

43. On May 18, 2021, BFS issued the Consolidated Bid Proposal to G&S, as the putative framing subcontractor on the Kenmore Project, offering to source and provide the lumber for the Kenmore Project at the price of $2,463,449.27.

44. Gonzalez declined to accept the offer and bind G&S to the contract terms.

45. Instead, Bohannon, acting for Arc.City, signed the Consolidated Bid Proposal, accepting its terms. Bohannon emailed a copy of the signed agreement to BFS later that same day.

46. Bohannon accepted the offer because he wanted to lock in the volatile lumber prices, take control of the Kenmore Project lumber, move the project forward, and avoid the G&S markup.

47. The terms of the Consolidated Bid Proposal, together with the lumber list and BFS website terms and conditions, are sufficient for a court to enforce them.

48. The parties acted consistent with a mutual intent to be bound, in that Bohannon intentionally signed the offer in acceptance of its terms and BFS began sourcing the Kenmore Project lumber the next day.

49. Bohannon's testimony that he signed the offer because he expected G&S to indemnify him is not credible. Bohannon was impeached on this point, and other, credible witnesses contradicted this testimony.

50. The Court finds that the Consolidated Bid Proposal constitutes an enforceable contract, with Arc.City promising to pay the quoted amount in exchange for BFS sourcing and supplying the Kenmore Project lumber.

**B.    Plaintiff's Performance or Excuse for Nonperformance**

51. BFS sourced and purchased lumber pursuant to the Consolidated Bid Proposal and was ready and able to start delivering lumber to the Kenmore Project site within thirty days.

52. BFS did not deliver the lumber to Arc.City because the Kenmore Project was delayed and because Arc.City would not accept the framing lumber.

53. BFS did not issue invoices to Arc.City for the Kenmore Project lumber because BFS invoices for lumber upon delivery.

54. The Consolidated Bid Proposal's "30-day" delivery and "even delivery" terms did not require BFS to deliver lumber to the project site when the project site was

not prepared to accept it. Instead, the preponderance of the evidence at trial established that these terms were designed and included in the Consolidated Bid Proposal to protect BFS's interests in moving construction projects forward.

55. BFS performed its obligation to procure lumber pursuant to the Consolidated Bid Proposal, and is excused from the obligation to deliver because a preponderance of the evidence at trial established that Arc.City would not accept lumber for the Kenmore Project.

### C. Defendant's Breach of Obligations under the Contract

56. In August 2021, Bohannon expressly refused to accept or pay for the lumber that BFS procured for Arc.City pursuant to the Consolidated Bid Proposal.

57. This refusal constitutes a repudiation and breach of Arc.City's obligation to pay for the lumber BFS procured pursuant to the Consolidated Bid Proposal.

58. The Consolidated Bid Proposal's "90-day" term did not entitle Bohannon to unilaterally revoke his acceptance. Instead, the preponderance of the evidence at trial established that the 90-day term was designed and included in the Consolidated Bid Proposal to protect BFS's interests by giving it the option to reprice a stale project.

59. Accordingly, Bohannon's September 1, 2021 email purporting to invalidate the Consolidated Bid Proposal, (Ex. 1020), has no legal force or effect.

### D. Plaintiff's Damages

60. California Commercial Code section 2703 provides:

> Where the buyer wrongfully rejects or revokes acceptance of goods or fails to make a payment due on or before delivery or repudiates with respect to a part or the whole, then with respect to any goods directly affected and, if the breach is of the whole contract (Section 2612), then also with respect to the whole undelivered balance, the aggrieved seller may
>
> (a) Withhold delivery of such goods;
> (b) Stop delivery by any bailee as hereafter provided (Section 2705);
> (c) Proceed under the next section respecting goods still unidentified to the contract;
> (d) Resell and recover damages as hereafter provided (Section 2706);

(e) Recover damages for nonacceptance (Section 2708) or in a proper case the price (Section 2709);
(f) Cancel.

61. California Commercial Code section 2706(1) provides:

Under the conditions stated in Section 2703 on seller's remedies, the seller may resell the goods concerned or the undelivered balance thereof. Where the resale is made in good faith and in a commercially reasonable manner the seller may recover the difference between the resale price and the contract price together with any incidental damages allowed under the provisions of this division (Section 2710), but less expenses saved in consequence of the buyer's breach.

62. BFS was entitled pursuant to sections 2703 and 2706(1) of the California Commercial Code to withhold delivery of the lumber purchased pursuant to the Consolidated Bid Proposal, resell it to other customers at the then market price, and recover the difference between the resale price and the contract price.

63. BFS purchased $704,423.17 worth of lumber for the Kenmore Project pursuant to the Consolidated Bid Proposal, representing $962,459.66 of the contract price.

64. Following Arc.City's repudiation, BFS was able to sell the lumber it purchased for Arc.City's Kenmore Project to other customers at the then market price, for a total amount of $436,413.08.

65. The testimony of Norihiro is sufficient to validate the purchase and resale figures summarized in Exhibit 35. The Court also finds BFS's damages spreadsheet is reliable and properly used to demonstrate BFS's contract damages.

66. BFS acted reasonably in mitigating its damages after Arc.City repudiated the Consolidated Bid Proposal, including selling the Kenmore Project lumber as expeditiously as the market and circumstances allowed.

67. The Court finds that BFS is entitled to recover the difference between its resale price and the portion of the contract price for which BFS purchased lumber. That sum is **$526,046.47**.

### E. Defendant's Defenses

68. The Court expressly finds that the evidence at trial does not support Arc.City's further arguments in defense, that: (i) BFS's failure to deliver within thirty days of May 18, 2021, voided the Consolidated Bid Proposal; (ii) Bohannon was entitled to unilaterally cancel the Consolidated Bid Proposal after ninety days; (iii) BFS unreasonably delayed mitigation efforts; and (iv) BFS's damages are limited to 25% restocking costs.

## V. CONCLUSION

In light of the above findings of fact and conclusions of law, the Court **ORDERS** BFS and Arc.City to confer and submit a Proposed Partial Judgment no later than seven (7) days after the date of this order.

**IT IS SO ORDERED.**

April 11, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**