O

# United States District Court
# Central District of California

| | |
|---|---|
| BFS GROUP, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>ARC.CITY, INC.,<br><br>        Defendant.<br>ARC.CITY, INC.,<br><br>        Third Party Plaintiff,<br><br>    v.<br><br>GONZALEZ AND SONS CONSTRUCTION INC.,<br><br>        Third Party Defendant. | Case № 2:22-cv-03779-ODW (AJRx)<br><br>**ORDER DENYING THIRD PARTY PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT [102]** |

## I.    INTRODUCTION

Following a bench trial, the Court entered Partial Final Judgment against Defendant Arc.City, Inc. and in favor of Plaintiff BFS Group, LLC, finding Arc.City breached its contract with BFS and awarding BFS damages. (Partial Final J., ECF No. 97.) Arc.City now moves as Third Party Plaintiff for entry of default judgment against Third Party Defendant Gonzalez and Sons Construction Inc. ("G&S"), for indemnity and contribution with respect to that judgment. (Third Party Compl.

("TPC"), ECF No. 9; Mot. Default J. ("Motion" or "Mot.") 2–3, ECF No. 102.) For the reasons that follow, the Court **DENIES** Arc.City's Motion.[1]

## II.   BACKGROUND

The factual allegations Arc.City asserts in the Third Party Complaint differ in material respects from, and conflict with, the Court's findings of fact and conclusions of law derived from the evidence presented at trial in this case. (*Compare* TPC, *with* Findings of Fact & Conclusions of Law ("Order FFCL"), ECF No. 93.) Therefore, the Court details Arc.City's Third Party Complaint allegations separately from the Court's trial findings.

### A.   ARC.CITY'S THIRD PARTY COMPLAINT ALLEGATIONS

Arc.City is a licensed general contractor in California, involved in the construction business. (TPC ¶ 6.) In May 2021, Arc.City sought to hire G&S as the framing subcontractor on a Los Angeles construction project (the "Kenmore Project"). (*Id.* ¶¶ 4, 6.) Arc.City believed G&S would accept Arc.City's subcontract offer, sign a proffered Letter of Intent ("LOI"), and accept responsibility for the Kenmore Project lumber. (*Id.* ¶ 8.) Lumber supplier BFS prepared and sent a quote for the Kenmore Project lumber to G&S. (*See id.* ¶ 9.) However, Arc.City allegedly did not authorize acceptance of the quote unless and until G&S signed the LOI with Arc.City, which G&S never did. (*Id.* ¶¶ 9–10.) Arc.City alleges that, consequently, the quote expired by its own terms and never became a binding contract. (*Id.* ¶¶ 10–10.a.) Further, although the quote bears a signature, that signature is allegedly unidentified and not traceable to Arc.City, meaning that Arc.City lacks contractual privity with BFS. (*Id.* ¶ 10.a.)

Arc.City alleges that, to the extent the Court finds a valid contract, G&S is the named buyer and the party responsible for any damages BFS suffered due to any breach. (*Id.* ¶ 11.) On this basis, Arc.City seeks indemnity and contribution from G&S as to any liability assessed against Arc.City for breach of contract. (*Id.* ¶¶ 11, 12–29.)

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

2

### B.     THE COURT'S BENCH TRIAL FINDINGS

Over a two-day bench trial, the Court received evidence and heard counsels' arguments. Following careful consideration, the Court issued findings of fact and conclusions of law that establish the law of this case. *See Musacchio v. United States*, 577 U.S. 237, 244–45 (2016) (noting that the law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided"). Accordingly, to the extent Arc.City alleges facts inconsistent with those found by the Court by virtue of the bench trial, Arc.City's allegations are disproven and not accepted as true for purposes of default judgment. The following facts thus govern for the purposes of this Motion. As such, the Court summarizes its relevant findings made after trial. (*See* Order FFCL).

Arc.City is a licensed general contractor in California and, in 2021, was the general contractor on the Kenmore Project. (*Id.* ¶ 3.) Adam Bohannon is part-owner of Arc.City. (*Id.* ¶ 4.) G&S was a Los Angeles framing subcontractor at the time Arc.City was soliciting material and subcontractor bids for the Kenmore Project. (*Id.* ¶¶ 5, 7.) Carlos Gonzalez was a project manager for G&S. (*Id.* ¶ 5.) BFS supplies lumber and building materials to construction projects. (*Id.* ¶ 1.)

As part of its solicitation process, Arc.City sent BFS and G&S a lumber takeoff list for the Kenmore Project. (*Id.* ¶ 7.) In response to Arc.City's soliciting bids, G&S sent BFS a lumber takeoff list for the Kenmore Project to price the lumber for its framing subcontract bid. (*Id.* ¶ 8.) On May 18, 2021, BFS issued a "Consolidated Bid Proposal" to G&S, offering to source and provide the lumber for the Kenmore Project. (*Id.* ¶ 9.) Due to extreme lumber market volatility at the time, the quote was good for only one day. (*Id.* ¶ 10.)

As of May 18, 2021, Arc.City and G&S had not reached a subcontract agreement for the Kenmore Project. (*Id.* ¶ 12.) Thus, Gonzalez did not want to sign and accept the Consolidated Bid Proposal for the Kenmore Project because G&S did not have a signed subcontract with Arc.City yet, and Gonzalez did not want to be responsible for

1  the lumber if the subcontract negotiations failed.  (*Id.* ¶ 12.)  Accordingly, because
2  Gonzalez declined to sign and accept responsibility, Bohannon signed the Consolidated
3  Bid Proposal on behalf of Arc.City to accept and secure the quoted prices.  (*Id.* ¶¶ 12–
4  14, 45.)  Additionally, Bohannon signed because he wanted to take control of the lumber
5  for the Kenmore Project, move the project forward, and avoid G&S's markup on the
6  lumber.  (*Id.* ¶¶ 14, 46.)  By signing and accepting BFS's offer to source and sell the
7  lumber, as set forth in the Consolidated Bid Proposal, Bohannon bound Arc.City to
8  purchase the Kenmore Project lumber from BFS ("Lumber Contract").  (*Id.* ¶ 50.)  Due
9  to the extreme lumber market volatility, BFS began immediately sourcing and ordering
10 the lumber for the Kenmore Project.  (*Id.* ¶ 15.)

      Lumber prices then declined significantly.  (*Id.* ¶ 19.)  In subsequent months, BFS and Gonzalez learned that Bohannon was shopping the Kenmore Project lumber and indicating that Arc.City was not going to honor the Lumber Contract that Bohannon had signed in May.  (*Id.* ¶ 20.)  Bohannon ultimately confirmed to BFS and G&S that Arc.City was refusing to purchase the lumber from BFS, and commented that he would be better off taking his chances in court.  (*Id.* ¶¶ 21–22, 56–57.)  Ultimately, Arc.City breached the Lumber Contract with BFS by refusing to purchase any of the Kenmore Project lumber from BFS.  (*Id.* ¶¶ 24–25, 50, 55–57.)

### C.  PROCEDURAL BACKGROUND

      In June 2022, BFS brought this action against Arc.City to recover its losses resulting from the breached Lumber Contract.  (*See* Compl. ¶¶ 1–2, 5–14, ECF No. 1.)  In response, Arc.City filed a Third Party Complaint against G&S asserting that G&S is the party responsible for the breach, and seeking indemnity and contribution for any liability assessed against Arc.City.  (*See* TPC ¶¶ 1–2, 12–26.)  Arc.City served G&S with the Third Party Complaint, but G&S did not answer.  (Proof Service, ECF No. 13.)  Accordingly, upon Arc.City's request on August 18, 2022, the Clerk entered G&S's default.  (Default G&S, ECF No. 19.)

On October 31 and November 1, 2023, the Court held a two-day bench trial on BFS's Complaint against Arc.City for breach of contract. (*See* Order FFCL 1.) The Court issued findings of fact and conclusions of law, holding that Arc.City entered into the valid and enforceable Lumber Contract with BFS, Arc.City breached that contract by refusing to accept or purchase the lumber that BFS ordered and procured, and Arc.City was therefore liable for BFS's damages resulting from the breach. (*Id.* ¶¶ 50, 56–57, 67; Partial Final J. ¶ 2.)

Arc.City now moves for default judgment against G&S, seeking indemnity and contribution. (*See* Mot. 1–3.)

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant a default judgment after the Clerk enters default under Rule 55(a). However, before a court can enter a default judgment against a defendant, the plaintiff must satisfy the procedural requirements in Rule 54(c) and 55, and Central District Civil Local Rules 55-1 and 55-2. Even if these procedural requirements are satisfied, a "defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." *PepsiCo, Inc., v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). Instead, "[t]he district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

Generally, after the Clerk enters a default, the defendant's liability is conclusively established, and the well-pleaded factual allegations in the plaintiff's complaint "will be taken as true" except those pertaining to the amount of damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)). However, under the law of the case doctrine, a court will generally refuse to consider an issue that it has already decided. *See Gonzalez v. Arizona*, 677 F.3d 383, 389 n.4 (9th Cir. 2012), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013). The law of the case "should continue to govern the same issues in subsequent stages in the same case."

*Musacchio*, 577 U.S. at 244–45. A court may depart from a prior holding only if "the first decision was clearly erroneous, an intervening change in the law has occurred, the evidence at the later stage of the case is substantially different, other changed circumstances exist, or a manifest injustice would otherwise result." *Fikre v. FBI*, 35 F.4th 762, 770 n.6 (9th Cir. 2022) (internal quotation marks omitted), *aff'd*, 601 U.S. 234 (2024).

## IV. DISCUSSION

Regardless of whether Arc.City satisfies the procedural requirements, it fails to establish that entry of default judgment against G&S is substantively appropriate.

In considering whether entry of default judgment is substantively warranted, courts consider the "*Eitel* factors": (1) the possibility of prejudice to plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake; (5) the possibility of a material factual dispute; (6) whether the default was due to excusable neglect, and (7) the strong policy favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). "Of all the *Eitel* factors, courts often consider the second and third factors to be the most important." *Vietnam Reform Party v. Viet Tan-Vietnam Reform Party*, 416 F. Supp. 3d 948, 962 (N.D. Cal. 2019) (internal quotation marks omitted). Accordingly, the Court considers these two factors first.

The second and third *Eitel* factors require a plaintiff to "state a claim on which the [plaintiff] may recover." *PepsiCo*, 238 F. Supp. 2d at 1175 (alteration in original). Although well-pleaded allegations are generally taken as true, "claims which are legally insufficient[] are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Moreover, where Arc.City's well-pleaded allegations are inconsistent with the Court's findings of fact and conclusions of law following the bench trial, the Court's findings and conclusions constitute the law of the case and govern here. *See Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 954–55 (9th Cir. 2019) (rejecting claims contrary to the law of the case).

In the Motion, Arc.City pursues default judgment on its claims for equitable indemnity and contribution. (*See* Mot. 1–2; *cf.* TPC ¶¶ 12–29 (pleading claims for equitable indemnity, contribution, and declaratory relief).)

Equitable indemnity "is premised on a joint legal obligation to another for damages" and is "subject to allocation of fault principles and comparative equitable apportionment of loss." *C.W. Howe Partners Inc. v. Mooradian*, 43 Cal. App. 5th 688, 700 (2019) (quoting *Prince v. Pac. Gas & Elec. Co.*, 45 Cal. 4th 1151, 1158 (2009)). "The elements of a cause of action for [equitable] indemnity are (1) a showing of fault on the part of the indemnitor and (2) resulting damages to the indemnitee for which the indemnitor is . . . equitably responsible." *Id.* (alterations in original).

"It is well-settled in California that equitable indemnity is only available among *tortfeasors* who are jointly and severally liable for the plaintiff's injury." *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1040 (2006). "Without any action sounding in tort, there is no basis for a finding of potential joint and several liability on the part of defendants, thereby precluding a claim for equitable indemnity." *BFGC Architects Planners, Inc. v. Forcum/Mackey Constr., Inc.*, 119 Cal. App. 4th 848, 853 (2004). Thus, "[a]s a matter of law, a plaintiff cannot recover under a theory of equitable indemnity where . . . there is no viable tort claim." *UnitedHealthcare Ins. Co. v. Sahara Palm Plaza, LLC*, No. 22-55814, 2023 WL 6566486, at *2 (9th Cir. Oct. 10, 2023) (citing *BFGC*, 119 Cal. App. 4th at 853). Consequently, "California law does not permit equitable apportionment of damages for breach of contract." *Stop Loss*, 143 Cal. App. 4th at 1040–41 & n.2.

The right of contribution is also an equitable apportionment doctrine and is available "[w]here a money judgment has been rendered jointly against two or more defendants in a tort action." *Underwriters at Lloyd's Subscribing to Cover Note B1526MACAR1800089 v. Abaxis, Inc.*, 491 F. Supp. 3d 506, 519–20 (N.D. Cal. 2020) (alteration in original) (quoting Cal. Civ. Proc. Code § 875(a)). Contribution and indemnity are related doctrines, with indemnity being "only an extreme form of

contribution." *C.W. Howe*, 43 Cal. App. 5th at 699 n.9 (quoting *Am. Motorcycle Assn. v. Superior Ct.*, 20 Cal. 3d 578, 591 n.3 (1978)).

Here, Arc.City's underlying liability is for breach of the Lumber Contract. (*See* Order FFCL 1, ¶¶ 36, 50, 55–57, 67; Partial Final J.) There is no underlying tort liability that could make Arc.City and G&S joint *tortfeasors*. (*See generally* Compl.; Order FFCL; Partial Final J.) In a case such as this one, where the damages sought are contractual and there is no viable tort claim, no basis exists for equitable indemnity. *See BFGC*, 119 Cal. App. 4th at 853 (holding that an "improper attempt to recast a breach of contract cause of action as a tort claim" precluded a claim for equitable indemnity); *Miller v. Sec. Life of Denver Ins. Co.*, No. C 11-1175-PJH, 2012 WL 1029279, at *5 (N.D. Cal. Mar. 26, 2012) ("A claim for equitable indemnity requires a tort claim asserted by the original plaintiff against the proposed indemnitee on which to base joint and several liability, between the proposed indemnitor and indemnitee."); *Travelers Cas. & Sur. Co. of Am. v. Desert Gold Ventures, LLC*, No. 2:09-cv-4224-PSG (AJWx), 2010 WL 5017798, at *15 (C.D. Cal. Nov. 19, 2010) ("Whatever losses [defendants] incur as a result of their breach of the [contract] are theirs alone, not subject to apportionment."). Accordingly, Arc.City's claim for equitable indemnity fails as a matter of law. *See UnitedHealthcare*, 2023 WL 6566486, at *2.

As contribution and indemnity are related apportionment doctrines, and as California law does not permit equitable apportionment of damages for breach of contract, Arc.City's contribution claim also fails as a matter of law for the same reason.

None of Arc.City's arguments in support of default judgment overcome this fatal flaw. Moreover, even if California law permitted equitable apportionment based on contract damages, Arc.City fails to persuade the Court that such relief is appropriate. For instance, Arc.City argues that the Court "overlooked" the fact that Gonzalez signed the Consolidated Bid Proposal after Bohannon signed for Arc.City; that this "overlooked" fact makes G&S jointly and severally liable for the breach of contract; and that Bohannon only signed in reliance on Gonzalez's assurances that G&S would

indemnify Arc.City for the lumber. (Mot. 1–2, 10–11, 14–15.) First, the Court thoroughly considered and weighed all evidence presented at trial; it did not "overlook" any facts. (*See* Order FFCL 1–2.) Second, the Court expressly found that Bohannon's testimony of reliance was not credible, impeached, and contradicted by other credible witnesses. (Order FFCL ¶ 49.) Third, specifically with respect to the propriety of default judgment, Arc.City does not allege that Gonzalez signed the Lumber Contract in the Third Party Complaint. (*See generally* TPC.) And even if it did, evidence at trial established that Gonzalez never promised to indemnify Arc.City for the Lumber Contract; to the contrary, the evidence demonstrated that Gonzalez never would have signed had Bohannon not *first* accepted responsibility for the lumber. (*See* Order FFCL ¶¶ 12, 44.)

Arc.City's additional arguments similarly lack merit because they are either (1) not pleaded, (2) irrelevant, or (3) expressly contradicted or rejected in the Court's trial findings. Arc.City essentially seeks reconsideration of many of the Court's central findings and conclusions following trial. (*Compare, e.g.*, Mot. 5 ("These facts undermine the notion that Bohann[o]n, on behalf of Arc.City, simply wanted to take over the project."), *with* Order FFCL ¶ 46 ("Bohannon accepted the offer because he wanted to lock in the volatile lumber prices, take control of the Kenmore Project lumber, move the project forward, and avoid the G&S markup.").) As noted, the Court's conclusions constitute the law of the case, and Arc.City does not identify an applicable exception. *See Fikre*, 35 F.4th at 770 & n.6 (providing that, absent an exception, the court's earlier "decision[s] should continue to govern the same issues in subsequent stages in the same case"). In any event, the Court finds no exception applies here and, accordingly, declines to depart from its prior findings and conclusions. *See Rocky Mountain Farmers Union*, 913 F.3d at 951–52 (rejecting claims contrary to the law of the case where the prior decision was not clearly erroneous and would not work a manifest injustice).

Arc.City fails as a matter of law to state a claim for equitable indemnity or contribution on which it may recovery. Additionally, the Court's express findings of fact and conclusions of law following the bench trial clearly establish that Arc.City is not entitled to recover on these claims. Therefore the second and third *Eitel* factors weigh against entering default judgment against G&S. As Arc.City does not establish that the most important *Eitel* factors weigh in its favor, the Court need not consider and declines to reach the remaining factors.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Arc.City's Motion for Entry of Default Judgment against G&S for indemnity and contribution. (ECF No. 102.) The Court will issue Judgment in accordance with this Order.

**IT IS SO ORDERED.**

October 15, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**